UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES SHANKS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-3355 |
| | § | |
| CARRIZO OIL & GAS, INC., | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for FLSA Conditional Certification and Notice under 29 U.S.C. § 216(b) (Doc. 15) filed by Plaintiff James Shanks ("Shanks"). Plaintiff's proposed class includes "all individuals who, at any point, during the past three years prior to the filing of this lawsuit, worked for Defendant on any of Defendant's oil and gas projects as Pumpers and Production Foreman and did not receive overtime pay." (Doc. 15, at 8). Defendant Carrizo Oil & Gas, Inc. ("Carrizo") argues in opposition that Plaintiff has failed to meet his burden to demonstrate that class treatment is appropriate in this case. (Def.'s Resp. at 8, Doc. 24). Upon review and consideration of the motion and the responses thereto,[1] the relevant legal authority, and for the reasons stated below, the Court concludes that the motion should be denied.

I.   **Background**

Carrizo is an energy company engaged in the exploration, development, and production of oil and gas. (Doc. 24, at 2). Shanks was employed by Carrizo as a production foreman. (Doc. 15, at 3). As a production foreman, Shanks "[did] production work in the field, prepared

---

[1] Def.'s Resp. (Doc. 24); Pl.'s Reply (Doc. 28); Def.'s Surreply (Doc. 29).

samples for testing, set up and ran steam generators, worked on rigs, pulled pumps and tubing, worked on wells, inspected equipment, took temperatures on wells, maintained a gas line, and cleaned equipment and wells." (Aff. James Shanks, at ¶¶ 2, 9; Doc. 15-2). Shanks was paid a flat salary of $5,500 per month. (Doc. 15-2, at ¶ 5). From his date of hire in March 1994 until 2010, Shanks worked from approximately 6:00 a.m. until 6:00 p.m., and occasionally into the evenings. (Doc. 15-2, at ¶ 7). His work schedule consisted of nineteen days of consecutive work followed by two days off; then five days of consecutive work followed by two days off. (Doc. 15-2, at ¶ 6). Thereafter, the schedule would repeat. His schedule changed in July 2012, when Shanks began working Monday through Friday with every weekend off. (Doc. 15-2, at ¶ 6). That schedule continued until Shanks's termination in October 2012. (Doc. 15-2, at ¶ 6).

Shanks filed this action on behalf of himself and others similarly situated who worked for Carrizo as production foremen and pumpers in oil and gas projects in "Texas, Colorado, Ohio, Pennsylvania, and Louisiana." (Doc. 15, at 1). Shanks alleges that Carrizo violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* by failing to pay production foremen and pumpers overtime pay of time-and-a-half for all hours worked in excess of forty per work week. (Doc. 15, at 1). In support of his motion for conditional certification, Shanks offers his own declaration wherein he states:

> "I believe that employees working as Production Foremen and Pumpers for Carrizo Oil & Gas primarily in the Eagle Ford Shale in South Texas, the Barnett Shale in North Texas, the Marcellus Shale in Appalachia, the Niobrara Formation in Colorado, the Utica Shale in Eastern Ohio, and in onshore trends along the Texas and Louisiana Gulf Coast region worked a similar number of hours, performed similar duties, and were also paid on a salary basis like me." (Doc. 15-2, at ¶ 10).

Shanks also states that Carrizo's failure to properly compensate him and the other potential class members results from "a policy or practice of misclassifying employees as subcontractors." (Doc. 15, at 7).

Carrizo objects to class treatment for this action on the grounds that Shanks has failed to meet his burden to show that some identifiable facts or legal nexus binds the proposed class, and he has failed to assert or allege the existence of any other plaintiff interested in joining the suit. (Doc. 24, at 1). In support of Carrizo's objections, it offers the declarations of Sheldon Lowery ("Lowery"), a production manager, (Doc. 24-1) and Michelle Bailey ("Bailey"), Carrizo's Vice President of Human Resources (Doc. 24-2).

In Lowery's declaration, he describes Carrizo's domestic assets in Texas, Colorado, Pennsylvania, and Ohio. (Doc. 24-1, at ¶¶ 2-3). He explains that Camp Hill, the Texas site where Shanks was employed, is the only Carrizo operation that uses steam injection wells, whereas all of the other assets are developed by horizontal drilling utilizing hydraulic fracturing technology. (Doc. 24-1, at ¶¶ 3-4). Therefore, he claims, "[t]he operations at the Camp Hill asset are different from the operations in other regions where Carrizo has wells." (Doc. 24-1, at ¶ 4.) Lowery also states that the primary duties of a production foreman are to "monitor, manage and oversee the operations of wells." (Doc. 24-1, at ¶ 5). "Production foremen spend, on average, 70% to 90% of their time each work week supervising and overseeing the work of the pumpers and the contractors;… and 10% to 30% of each work week performing physical or manual work." (Doc. 24-1, at ¶¶ 5, 7).

In Bailey's declaration, she states that between 2010 and the present, Carrizo employed eleven production foremen and fifteen pumpers throughout its sites. (Doc. 24-2, at ¶¶ 3-4). Production foremen are classified as exempt for purposes of overtime compensation, and many

of them earn over $100,000 per year.  (Doc. 24-2, at ¶ 3.)  Pumpers at Carrizo's Barnett, Eagle Ford, Marcellus, and Niobrara sites are classified as non-exempt and receive overtime pay when their hours exceed forty in a given work week.  (Doc. 24-2, at ¶ 5).  Pumpers at Camp Hill are paid on salary and do not receive overtime pay.  (Doc. 24-2, at ¶ 5).  Carrizo also hires contractors to complete the pumper work at its Barnett, Eagle Ford, Marcellus, and Niobrara assets.  (Doc. 24-2, at ¶ 6).

Carrizo argues that because Shanks worked at only one site, Camp Hill, he has no basis for his assertion that employees at other sites are similarly situated to him.  (Doc. 24, at 10). Additionally, Carrizo contends that the differences among its various sites in how production foremen and pumpers are classified and paid preclude certification in this case.  (Doc. 24, at 11). Finally, Carrizo points out that Shanks's job duties at Camp Hill are not typical of other production foremen.  (Doc. 24, at 12).

## II.     Legal Standard

Under the FLSA, nonexempt employees must earn a minimum wage of $7.25 per hour, and no employer shall employ any nonexempt employee in excess of forty hours per week without compensation at one and one-half times the regular rate.  29 U.S.C. §§ 206(a), 207(a). Section 216(b) of the FLSA permits an employee to bring an action "for and [on] behalf of himself . . . and other employees similarly situated."  *Id.* at § 216(b).  Collective actions serve the purpose of decreasing litigation costs by efficiently resolving common issues of law and fact in a single proceeding.  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  To certify a collective action under the FLSA, two requirements must be satisfied.  "First, the named representative and the putative members of the prospective FLSA class must be similarly

situated. Second, the pending action must have a general effect." *England v. New Century Fin. Corp.*, 370 F.Supp. 2d 504, 507 (M.D. La. 2005). Class treatment is not appropriate where the action arises from circumstances that are "purely personal to the plaintiff, and not from any generally applicable rule or policy." *Id.*

The Fifth Circuit has noted the two different tests that courts apply to determine if the putative class members are "similarly situated." *Mooney v. Armaco Srvcs. Co.*, 54 F.3d at 1213–14 (5th Cir. 1995). Like most district courts, this Court has generally adopted the two-stage approach articulated in *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J. 1987), which consists of (i) a notice stage, followed by (ii) a decertification stage.[2] *See Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 916 n.2 (5th Cir. 2008) (finding that "collective actions typically proceed in two stages"). At the notice stage of the *Lusardi* approach, the district court first makes a preliminary determination of whether potential plaintiffs are similarly situated to the named plaintiff. *Mooney,* 54 F.3d at 1213–14. If they are, then the court conditionally certifies the action and authorizes notice to potential plaintiffs to opt in, and the suit "proceeds as a representative action throughout discovery." *Id.* at 1214. Generally, after the close of discovery, the defendant initiates the second stage by filing a motion for "decertification." *Id.* At the decertification stage, the Court makes a factual determination of whether the plaintiffs are "similarly situated" based on the discovery evidence. *Id.* If the court determines from the discovery evidence that the plaintiffs are in fact similarly situated, then the case continues as a representative action. *Id.* If the court finds that the plaintiffs are not similarly situated, then the class is decertified, the "opt-in" plaintiffs are dismissed without prejudice, and the original plaintiffs proceed to trial on their individual claims. *Id.* at 1213–14.

---

[2] A second, less common approach is the "spurious" class action procedure employed in *Shushan v. Univ. of Colo.,* 132 F.R.D. 263 (D. Colo. 1990), which analyzes collective certification according to the Rule 23 class action requirements; i.e., numerosity, commonality, typicality and adequacy of representation.

The instant case concerns the first step of *Lusardi*—the notice stage. At the notice stage, plaintiffs bear the burden to establish that they are similarly situated to other employees in the proposed class. *England*, 370 F. Supp. 2d at 507. Plaintiffs are similarly situated when they have the same job requirements and pay provisions. *Aguilar v. Complete Landsculpture, Inc.*, 3:04-cv-0776-d, 2004 WL 2293842, at *1 (N.D. Tex. Oct. 7, 2011). Courts determine whether the burden has been met using a "fairly lenient standard," requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Mooney,* 54 F.3d at 1214, n.8 (citing *Sperling*, 118 F.R.D. at 407); *see also England*, 370 F. Supp. 2d at 507-08 (Plaintiffs must offer support of "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]."). A court will customarily make its decision "based only on the pleadings and any affidavits which have been submitted." *Mooney*, 54 F.3d at 1213-14. Generally, to meet this burden, a plaintiff must show "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit[3]." *Morales v. Thang Hung Corp.*, No. 4:08-2795, 2009 WL 2524601, at *2 (S.D. Tex. Aug. 14, 2009) (citing *Maynor v. Dow Chemical Co.*, No. G-07-0504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008)); *Aguirre v. SBC Commc'ns, Inc.*, No. Civ.A.H-05-3198, 2006 WL 964554, at *6 (S.D. Tex. Apr. 11, 2006) (same). "[C]ourts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified . . .; whether affidavits of potential plaintiffs were submitted . . .; and whether evidence of a widespread discriminatory plan was

---

[3] Some courts have rejected this third non-statutory element. *See, e.g., Dreyer v. Baker Hughes Oilfield Operations, Inc.,* No. H–08–1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec.11, 2008).

submitted." *England*, 370 F. Supp. 2d at 508 (quoting *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399 (E.D. Tex. 1999).

Section 213(a)(1) provides an exemption for "bona fide executive, administrative, or professional" employees. *Id.* § 213(a)(1). An employee whose primary duties involve management may be properly exempt from the FLSA's overtime requirement under this section. 29 C.F.R. § 541.700. The Code of Federal Regulations outlines the following "short test" for determining whether an employee's primary duties involve management: (1) the relative importance of the managerial duties as compared with other types of duties; (2) the frequency of the employee exercising discretionary powers; (3) the employee's relative freedom from supervision; and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the exempt employee. *Aguirre v. SBC Commc'n*, No. H-05-3198, 2007 WL 772756, at *10 (S.D. Tex. March 12, 2007) (citing *Auer v. Robbins*, 65 F.3d 702, 712 (8th Cir. 1995)); 29 C.F.R. § 541.700(a); 29 C.F.R. § 641.103.

Shanks claims that he and other production foremen were improperly classified under this exemption. The issue to be resolved at this stage of the litigation is not whether Shanks was properly classified an exempt employee, but whether the other individuals in the proposed class were similarly situated to Shanks in the types of duties that they had and how much discretion they exercised.

## III.   Discussion

Utilizing the two-step process recognized in *Lusardi*, the Court finds that Shanks has failed to present sufficient evidence to show that similarly situated individuals exist. Although the standard to satisfy the first step is lenient, the Court still requires "substantial allegations"

submitted." *England*, 370 F. Supp. 2d at 508 (quoting *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399 (E.D. Tex. 1999).

Section 213(a)(1) provides an exemption for "bona fide executive, administrative, or professional" employees. *Id.* § 213(a)(1). An employee whose primary duties involve management may be properly exempt from the FLSA's overtime requirement under this section. 29 C.F.R. § 541.700. The Code of Federal Regulations outlines the following "short test" for determining whether an employee's primary duties involve management: (1) the relative importance of the managerial duties as compared with other types of duties; (2) the frequency of the employee exercising discretionary powers; (3) the employee's relative freedom from supervision; and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the exempt employee. *Aguirre v. SBC Commc'n*, No. H-05-3198, 2007 WL 772756, at *10 (S.D. Tex. March 12, 2007) (citing *Auer v. Robbins*, 65 F.3d 702, 712 (8th Cir. 1995)); 29 C.F.R. § 541.700(a); 29 C.F.R. § 641.103.

Shanks claims that he and other production foremen were improperly classified under this exemption. The issue to be resolved at this stage of the litigation is not whether Shanks was properly classified an exempt employee, but whether the other individuals in the proposed class were similarly situated to Shanks in the types of duties that they had and how much discretion they exercised.

## III.   Discussion

Utilizing the two-step process recognized in *Lusardi*, the Court finds that Shanks has failed to present sufficient evidence to show that similarly situated individuals exist. Although the standard to satisfy the first step is lenient, the Court still requires "substantial allegations"

that the putative class members are similarly situated to the plaintiffs with regard to job requirements and pay provisions. *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003).

Shanks argues that as an employee with the job title of production foremen and with the primary job duties of a pumper, he is similarly situated to both groups of employees. Accordingly, his proposed class includes both exempt and non-exempt employees at all of Carizzo's sites. As this Court recently stated in *Blake v. Hewlett-Packard Co.*, where a class definition "includes both exempt and nonexempt employees, [] the members of the putative class cannot be similarly situated." No. 4:11-cv-592, 2013 WL 3753965, at *11. Shanks does not point to a single decision, policy, or plan that binds him and the potential class members together. Instead, he makes three different claims: (1) production foremen were subject to a policy of misclassification as exempt employees; (2) pumpers were improperly subject to a practice of compensation by a flat rate despite the number of hours worked; and (3) other unspecified employees were misclassified as "subcontractors." These allegations do not share a common factual nexus that would render joint resolution of these claims judicially efficient.

Even if the Court were to consider limiting the proposed class to those employees who shared Shanks's job title of production foremen, Shanks has not offered a reasonable basis to credit the assertion that other aggrieved production foremen exist. Carrizo, on the other hand, offers declarations and exhibits which contradict Shanks's claim that other production foremen are similarly situated to him in terms of job requirements and pay provisions. (Doc. 24-1; Doc. 24-2; Doc. 24-2 Attachs. A, B, C). While the merits of Shanks's claim that he was improperly classified as exempt are not pertinent to the certification analysis, Carrizo's evidence undermines

the usefulness of a class definition limited to production foremen. *See Blake*, 2013 WL 3753965, at *11.

Shanks has not identified any other potential plaintiffs; nor has he submitted any evidence of a widespread policy or plan which resulted in FLSA violations. All Shanks has done to satisfy his burden at the notice stage is to submit a conclusory declaration with unsupported allegations. Shanks's declaration does not specify either the job requirements or pay provisions for other production foremen or pumpers other than to say that they "worked a similar number of hours, performed similar duties, and were also paid on a salary basis…" His declaration does not offer an explanation of any evidence or experience which form the basis for his conclusion. Thus, Shanks has not provided the Court with a reasonable basis to conclude that other production foremen are similarly situated to him. *See Trinh v. JP Morgan Chase & Co.*, No. 07-cv-1666, 2008 WL 1860161, at *4 (findings affiants' "speculative beliefs" that other workers were similarly situated were insufficient to warrant class treatment); *Goldstein v. Children's Hops. of Phila.*, No. 10-cv-01190, 2012 WL 5250385, at *3 ("While we can accept from [plaintiff's] declaration that she believes that other were 'subjected to the same…work policies and practices, and affected the same way by them,' she provides no indication of how she came to form this belief and, thus, whether there is a reasonable basis for it."). Shanks has failed to meet his burden to demonstrate that Carrizo's production foremen and pumpers are similarly situated to him and that resolution of the issues implicated in his case would have a general effect for the entire class.

**IV.    Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's motion for conditional certification and court-approved notice is **DENIED**.

SIGNED at Houston, Texas, this 11th day of December, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE